KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
John E. Jureller, Jr.
Lauren C. Kiss
Stephanie R. Sweeney
200 West 41st Street, 17th Floor
New York, New York 10036
(212) 972-3000

*Attorneys for Debtors and Debtors-in-Possession*
*Weiss Multi-Strategy Advisors LLC and its affiliated debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **WEISS MULTI-STRATEGY ADVISERS LLC, *et al.,*** [1] | **Case No. 24-10743 (MG)** |
| **Debtors**. | **(Joint Administration Requested)** |
| GWA, LLC, WEISS MULTI-STRATEGY ADVISERS LLC, OGI ASSOCIATES, LLC, and WEISS SPECIAL OPERATIONS LLC, | |
| Plaintiffs, | Adv. Proc. No. 24- |
| vs. | **COMPLAINT TO AVOID AND RECOVER AVOIDABLE TRANSFERS** |
| JEFFERIES STRATEGIC INVESTMENTS, LLC and LEUCADIA ASSET MANAGEMENT HOLDINGS, LLC, | |
| Defendants. | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Weiss Multi-Strategy Advisers LLC (7518); GWA, LLC ("GWA") (7079); OGI Associates LLC ("OGI") (4493); and Weiss Special Operations LLC ("WSO") (7626). The location of Debtor Weiss Multi-Strategy Advisers LLC's principal place of business is 320 Park Avenue, 20th Floor, New York, New York 10022 and the Debtors' service address in these Chapter 11 Cases is P.O. Box 2857, Meriden, Connecticut 06450.

GWA, LLC ("GWA"), Weiss Multi-Strategy Advisers LLC ("WMSA"), OGI Associates, LLC ("OGI"), and Weiss Special Operations LLC ("WSO", and collectively with GWA, WMSA and OGI as the "Debtors" or the "Plaintiffs"), as debtors and debtors-in-possession in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), by their proposed counsel, file this complaint (the "Complaint") to avoid and recover certain transfers made by one or more of the Plaintiffs to or for the benefit of Jefferies Strategic Investments, LLC ("JSI") and Leucadia Asset Management Holdings, LLC ("LAM Holdings", and with JSI as the "Defendants"), on knowledge as to themselves and as to all other matters on information and belief, respectfully allege as follows:

## NATURE OF THE ACTION

1.     Plaintiffs seek a judgment avoiding as a preferential transfer and/or fraudulent conveyance that certain alleged[2] amended forbearance agreement, dated February 12, 2024 ("Amended Forbearance Agreement"), and any security interest granted or perfected in furtherance thereof.  The Amended Forbearance Agreement purports to provide Defendants, who were at all times unsecured creditors without any guarantees, with, among other things, (i) a first priority security interest in all of Plaintiffs' assets, (ii) joint and several guarantees by each of the Debtors (whether party to the Notes (as defined later herein), or not), and (iii) an offset on any fees that JSI owes to GWA or any other Debtor under the IMA (as defined later herein), in exchange for a forbearance for all of *two business days*.

2.     Further, Plaintiffs seek a money judgment relating to certain avoidable transfers in the aggregate amounts of $3 million made by Plaintiffs to JSI in the ninety (90) day, and in the aggregate sum of $20,000,000 during the two (2) year period, respectively, preceding the

---

[2]Plaintiffs never received a fully executed copy of the Amended Forbearance Agreement.  Plaintiffs reserve all rights which may apply due to the failure of Defendants to transmit a fully executed copy of the Amended Forbearance Agreement, including a judgment that such agreement is null and void to the extent not signed by the Defendants prior to the Petition Date.

commencement of the Debtors' bankruptcy cases (each transfer, an "Avoidable Transfer" and, collectively, the "Avoidable Transfers"). The Avoidable Transfers are set forth on Schedule 1 hereto.

3. Specifically, Plaintiffs seek entry of a judgment against Defendants (a) avoiding, (i) pursuant to 11 U.S.C. § 547(b), preferential transfers to or for the benefit of the Defendants, and (ii) pursuant to 11 U.S.C. § 548(a)(1)(B) any transfers that may have been fraudulent conveyances, including the Amended Forbearance Agreement and security interests contained therein; (b) preserving for the benefit of the estate, the Avoidable Transfers or the value thereof pursuant to 11 U.S.C. § 551; (c) pursuant to 11 U.S.C. § 550(a), directing Defendants to pay to Plaintiffs an amount to be determined at trial that is not less than the amount of the Avoidable Transfers, plus interest and costs; and (d) pending such payment, disallowing any claim of Defendants against the Debtors pursuant to 11 U.S.C. § 502(d) ("Section 502").

4. To the extent that Defendants have filed a proof of claim or have a claim listed on the Debtors' schedules as undisputed, liquidated, and not contingent, or have otherwise requested payment from the Debtors or the Debtors' Chapter 11 estates (collectively, the "Claims"), this Complaint is not intended to be, nor should it be construed as, a waiver of the Debtors' right to object to such Claims for any reason including, but not limited to, Section 502, and such rights are expressly reserved. Further, this Complaint is not intended to be, nor should it be construed as, a waiver of the Debtors' right to assert any other claim against the Defendants, including any claim for monies owed by either of the Defendants to the Debtors.

## JURISDICTION AND VENUE

5.      The United States Bankruptcy Court for the Southern District of New York (this "Court") has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157, 1331 and 1334(b).

6.      The statutory and legal predicates for the relief sought herein are sections 502(d), 547(b), 548(a)(1)(B), 550 and 551 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.      This proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2).

8.      Venue in this district is proper pursuant to 28 U.S.C. § 1409 because this proceeding arises in a case under the Bankruptcy Code pending in this district.

## PARTIES

**Plaintiffs**

9.      GWA is a Connecticut limited liability company with offices located at 400 Capital Boulevard, Suite 201, Rocky Hill, Connecticut 06067.

10.     WMSA is a Delaware limited liability company with offices located at 320 Park Avenue, 20th Floor, New York, New York 10022.

11.     OGI is a Connecticut limited liability company with offices located at 400 Capital Boulevard, Suite 201, Rocky Hill, Connecticut 06067.

12.     WSO is a Connecticut limited liability company with offices located at 400 Capital Boulevard, Suite 201, Rocky Hill, Connecticut 06067.

**Defendants**

13.     JSI is a Delaware limited liability company with offices located at 520 Madison

Avenue, New York, New York.

14.     LAM Holdings is a Delaware limited liability company with offices located at 520 Madison Avenue, New York, New York.

## BACKGROUND

15.     On April 29, 2024 (the "Petition Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.

16.     The Debtors continue to operate their businesses as debtors and debtors-in-possession.

17.     To date, no trustee has been appointed for the Debtors or their estates.

**A. The Debtors' Businesses.**

18.     GWA is a holding company, which holds the equity interests of the other Debtor entities.

19.     WMSA acts as a discretionary investment adviser to a number of private investment funds organized by WMSA, a mutual fund and a UCITS fund. WMSA also advises managed accounts owned by institutional investors over which it exercises sole investment discretion.

20.     On behalf of its clients, WMSA invests and trades in a wide range of U.S. and non-U.S. equities, fixed income securities, convertibles, options, other derivatives such as swaps, credit default protection and contracts for differences, futures, forward contracts, debt instruments and other types of financial instruments.  In connection with client trading, WMSA employs short-selling techniques and may utilize leverage and/or make margin purchases. There are generally no restrictions on WMSA's use of leverage or borrowing, other than those which may be imposed by applicable statutes and regulations or by the owner of a separately managed account.

21.     OGI is an investment company that contains GWA's excess capital.

22.     WSO was originally established to provide administrative services for the investment funds.  In 2016, it assigned its employees to WMSA and since then has been in the process of liquidating its assets.

23.     As of December 31, 2023, WMSA managed approximately $ 2.3 billion dollars in net assets on a discretionary basis.

24.     On March 1, 2024, as a result of, *inter alia*, actions taken by the Defendants as set forth below, the Debtors and any non-debtor affiliates announced their intentions to cease operations, terminate their advisory and affiliated businesses, close the managed funds and begin the process of returning capital to its clients.  To date, the majority of the Debtors' managed funds' assets have been liquidated and the majority of the proceeds have been or in the process of being distributed to the investors.

**B.  Agreements between Parties.**

25.     Over the course of their relationship, certain of the Debtors (GWA and WMSA) and the Defendants were parties to certain agreements (as amended and restated), including wherein at relevant times Defendants held profit equity interest in certain of the Debtors and were entitled to a share of the revenue of the Debtors.

26.     LAM Holding LLC ("LAM Holding") and GWA entered into that certain Strategic Relationship Agreement dated as of May 1, 2018 (as amended, the "SR Agreement").

27.     In connection with LAM Holding entering into the SR Agreement, WMSA and JSI (under its former name "Leucadia Fundings LLC") entered into the Investment Management Agreement dated May 1, 2018 (as amended, the "IMA").

28.     LAM Holding assigned all of its rights under the SR Agreement to LAM Holdings (under its former name Jefferies Asset Management Holdings LLC)(LAM Holdings, collectively

with JSI and their affiliated entities, the "Jefferies Parties"), pursuant to the Assignment and Assumption Agreement dated as of October 18, 2018 between LAM Holding and LAM Holdings.

29.    LAM Holding merged with and into LAM Holdings as of December 1, 2021, with LAM Holdings as the surviving company.

30.    GWA, WMSA, and JSI, as successor in interest to JFG Funding LLC, are parties to that certain Note Purchase Agreement, dated as of December 3, 2019 (as amended, the "2019 Note Purchase Agreement").

31.    GWA, WMSA, and JSI are parties to that certain Note Purchase Agreement, dated as of September 21, 2022 (as amended, the "2022 Note Purchase Agreement" and collectively with the 2019 Note Purchase Agreement, the "Note Purchase Agreements").

32.    Pursuant to the Note Purchase Agreements, GWA has issued (i) a $31,250,000 Note dated December 3, 2019, (ii) a $18,750,000 Note dated January 13, 2020, and (iii) a $3,000,000 Note dated September 21, 2022 (collectively, the "Notes").

33.    Under the Note Purchase Agreements and the Notes, JSI was at all relevant times an unsecured creditor of GWA and WMSA.  There were no guarantees under the Note Purchase Agreements or the Notes.  Further, at all relevant times, LAM Holdings was an unsecured creditor under the SR Agreement.  None of these agreements were guaranteed by any other party.

34.    Prior to February 2024, JSI, on the one hand, and GWA and WMSA, on the other hand, as parties to the Note Purchase Agreements and the Notes, had entered into certain forbearance letters on January 1, 2022, September 1, 2022 and July 25, 2023 (the "Initial Forbearance Agreements"), pursuant to which JSI agreed to forebear from exercising certain remedies subject to certain conditions.  Under each of the Initial Forbearance Agreements, GWA and WMSA continued to operate in the ordinary course of business, including, among other things,

payment of ordinary course obligations including bi-monthly salary and year-end bonus/compensation. As per industry standard, the majority of the employees annual compensation was paid at year-end in February.

35. On December 21, 2023, JSI delivered to GWA that certain Notice of Optional Redemption.

**C. Amended Forbearance Agreement.**

36. In February 2024, under the threat of the State Court Action (as defined below), the Defendants demanded that the Debtors enter into the Amended Forbearance Agreement. The Amended Forbearance Agreement substantially enhanced the nature and priority of their security for repayment of the Notes over all other creditors.

37. The Amended Forbearance Agreement contained the following new provisions and clauses, each of which provided the Defendants with significant additional benefits under the Note Purchase Agreement and the Notes[3]:

  a.  Security interest:

> *Each Weiss Party [the Debtors] grants and pledges to Secured Party [JSI] (as defined below), to secure the full and punctual payment of the Guaranteed Obligations when due (whether at the stated maturity, by acceleration or otherwise), a continuing security interest in all of such Weiss Party's right, title and interest in, to and under the Collateral, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof. The Secured Party's security interest shall continually exist until all Guaranteed Obligations have been paid in full. Each Weiss Party shall make notations, reasonably satisfactory to the Secured Party, on its books and records disclosing the existence of this security interest in the Collateral. "Collateral" shall mean all goods, accounts, equipment, inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, general intangibles, commercial tort claims, documents, instruments (including any promissory notes), chattel paper (whether tangible or*

---

[3] The recited portions of the Amended Forbearance Agreement are for explanatory purposes. The full and complete Amended Forbearance Agreement shall apply.

*electronic), cash, deposit accounts, securities accounts, certificates of deposit, fixtures, letters of credit rights (whether or not the letter of credit is evidenced by a writing), securities, and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located; and all of each Weiss Party's books and records relating to the foregoing, and any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds or any or all of the foregoing.  Terms used in this definition shall have the meanings given to such terms in Article 9 of the Code (as defined below), as applicable.*

    b.   Guarantees[4]:

*<u>Guaranty of Obligations</u>.  Each Weiss Party (other than GWA) hereby irrevocably and unconditionally guarantees to each of JSI and LAM Holdings (collectively, the "Beneficiaries") and their successors, transferees and assigns as a primary obligor the prompt and complete payment and performance by GWA and each other Weiss Party when due (whether at the states maturity, by acceleration or otherwise) of the Guaranteed Obligations (as defined herein).  This guaranty shall remain in full force and effect until the Guaranteed Obligations are paid in full, notwithstanding any increase in the amount of the Guaranteed Obligations or any modification or amendment of any instrument governing the Guaranteed Obligations.  As used herein, the term "<u>Guaranteed Obligations</u>" shall mean all the obligations of GWA and each other Weiss Party arising under any Note Purchase Agreement, the Notes, the SR Agreement and this Agreement, any loss, damage, penalty, action, judgment, suit, cost, expense, disbursement, liability, claim or other obligation, incurred by or behalf of any Beneficiary (including but not limited to reasonable out-of-pocket attorneys' fees and costs) arising out or, relating to or in connection with any Note Purchase Agreement, any Note, the SR Agreement, this Agreement or the transaction contemplated thereby.*

*<u>Nature of Guaranty</u>.  This guaranty is an irrevocable, absolute, and continuing guaranty of the full and punctual payment and performance and not a guaranty of collection.  This Guaranty may not be revoked by any Weiss Party and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by any Weiss Party.*

---

[4] OGI and WSO were not signatories to any of the Notes, Note Purchase Agreements or SR Agreement, and were not guarantors thereunder.

c.   Offset of indebtedness.

> *IMA Fees.  WMSA hereby agrees as of the date hereto to treat any amounts JSI owes WMSA pursuant to the IMA (including but not limited to any amounts for the period of January 1, 2023 through December 31, 2023, including but not limited to the Investment Teams Bonus Fees) as offsetting GWA's payment obligations to JSI under the Notes, and as a result (I) JSI shall have been deemed to have paid such amounts to WMSA and (ii) such deemed paid amounts shall be deemed to be a receipt by JSI of a payment by GWA on the Notes of such amounts.*

38.    In exchange for the substantial benefits received under the Amended Forbearance Agreement, the Defendants agreed to a Forbearance Period (as defined therein) of ***"the earlier of (i) two Business Days … or (y) the occurrence of any Forbearance Default"*** [as defined therein] (emphasis added).

39.    Under duress of the Defendants bringing an action to clawback the compensation from its employees, on February 12, 2024 the Debtors executed the Amended Forbearance Agreement.  To date, the Debtors have not received a counter-signed copy of the Amended Forbearance Agreement; nonetheless, on February 12, 2024 and February 13, 2024 the Defendants filed UCC-1 financing statements, seeking to perfect the security interests purportedly granted under the Amended Forbearance Agreement (the "Perfected Security Interests").

40.    The Amended Forbearance Agreement was a transfer of the Debtors' interests in property and/or an incurrence of an obligation by the Debtors, all for less than equivalent reasonable compensation.

41.    On February 17, 2024, the Defendants delivered to the Debtors a draft State Court complaint (the "State Court Action"), whereby they furthered their intention to commence an action against GWA and WMSA for breach of contract, and each of the employees of the Debtors who had received their annual compensation/bonus payment in February 2024 under causes of

action for avoidance of fraudulent conveyances as a result of, *inter alia*, certain purported fraudulent or false statements or false or misleading actions, i.e. the "clawback" of their respective annual compensation/bonus payment.

### D. Avoidable Transfers to Defendants.

42.     During the ninety (90) days before the Petition Date, that is between January 31, 2024, and April 29, 2024, (the "<u>Preference Period</u>"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, or otherwise to certain entities, including to Defendants.

43.     During the two (2) years before the Petition Date, that is between April 29, 2022, and April 29, 2024, (the "<u>Fraudulent Conveyance Period</u>"), the Debtors conducted transfers and/or incurred obligations to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, or otherwise to Defendants.

44.     During the Preference Period and the Fraudulent Conveyance Period, respectively, the Debtors made certain of the Avoidable Transfers to the Defendants, as set forth on <u>Schedule 1</u> hereto.

45.     On information and belief, the Avoidable Transfers were on account of an antecedent debt or were not prepayments for goods and/or services subsequently received, the Debtors did not receive reasonably equivalent value in exchange for the Avoidable Transfers, either (a) because the value of the services and/or goods received was in fact less than the Avoidable Transfers or (b) because the Debtors that received such goods and/or services were not the parties that had incurred the debt, and the Debtors were: (i) insolvent on the dates of the Avoidable Transfers or became insolvent as a result of the Avoidable Transfers; and/or (ii) engaged in business or a transaction for which any property remaining with the Debtors were

an unreasonably small capital at the time of, or as a result of, the Avoidable Transfers; and/or (iii) the Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

46.     The Debtors are seeking to avoid all of the Avoidable Transfers of an interest in any of the Debtors' property made by the Debtors to Defendants within the Preference Period and the Fraudulent Conveyance Period.

47.     During the course of this proceeding, the Debtors may learn (through discovery or otherwise) of additional transfers made to Defendants during the Preference Period, the Fraudulent Conveyance Period or that are otherwise avoidable.  It is the Debtors' intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property to or for the benefit of Defendants.

48.     To the extent that the Debtors' records do not accurately identify all transfers made by the Debtors of an interest in the Debtors' property, including but not limited to any transfers that cleared post-petition, the Debtors reserve their rights to amend this Complaint to include: (a) further information regarding the Avoidable Transfers, (b) additional transfers, (c) modifications of and/or revision of the Defendant's name or identity, (d) additional defendants, and/or (e) additional causes of action (collectively, the "Amendments"), that may become known to the Debtors at any time during the pendency of this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

### COUNT I - TO AVOID AMENDED FORBEARANCE AGREEMENT AS A PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(b)

49.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 48 above as if fully set forth herein.

50.     During the Preference Period, the Debtors and Defendants entered into the

Amended Forbearance Agreement.

51.     During the Preference Period, Defendants were creditors of certain of the Debtors

within the meaning of Bankruptcy Code section 547(b)(1) at the time of entry into the Amended

Forbearance Agreement by virtue of, *inter alia*, the Note Purchase Agreements, the Notes and the

SR Agreement for which certain of the Debtors were obligated to pay in accordance with the terms

thereof.

52.     The Amended Forbearance Agreement was a transfer of an interest of the Debtors

in property, including, among other things, (i) the granting of a priority security interest in all of

Plaintiffs' assets, (ii) the issuance of joint and several guarantees by each of the Debtors (whether

or not a party to the Note Purchase Agreements, Notes, or SR Agreement), and (iii) an offset on

any fees that JSI owes to GWA or any other Debtor under the IMA.

53.     The Amended Forbearance Agreement was made to, or for the benefit of,

Defendants because the terms thereof provided additional benefits to the Defendants, with little to

no consideration therefor, to reduce or pay a debt to the Defendants.

54.     The Amended Forbearance Agreement was for or on account of antecedent debts

owed by certain of the Plaintiffs to the Defendants.

55.     The Amended Forbearance Agreement was entered into during a time that Plaintiffs

were insolvent.  Plaintiffs are entitled to the presumption of insolvency for each transfer made

during the Preference Period pursuant to 11 U.S.C. § 547(f).

56.     The Amended Forbearance Agreement was made on or entered within ninety (90)

days prior to the Petition Date.

57.     The Amended Forbearance Agreement enabled Defendants to receive more than

they would receive if (a) Plaintiffs' cases was cases under chapter 7 of the Bankruptcy Code,

13

(b) the Amended Forbearance Agreement had not been made, and (c) Defendants received

payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

58.      Defendants were either the initial beneficiary of the Amended Forbearance

Agreement, the entity for whose benefit the Amended Forbearance Agreement was made, or were

the immediate or mediate transferee of the initial transferee receiving the Amended Forbearance

Agreement.

59.      By reason of the foregoing, the Amended Forbearance Agreement should be

avoided and set aside as a preferential transfer pursuant to 11 U.S.C. § 547(b).

**COUNT II - TO AVOID AMENDED FORBEARANCE AGREEMENT AS A
FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. § 548(a)(1)(B)**

60.      Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1

through 59 above as if fully set forth herein.

61.      The Amended Forbearance Agreement was made or entered into within two (2)

years prior to the Petition Date.

62.      The Amended Forbearance Agreement was made to, or for the benefit of, the

Defendants.

63.      The Amended Forbearance Agreement were transfers of an interest of the Debtors

in property, or an incurrence of an obligation by the Debtors, including, among other things, (i)

the granting of a priority security interest in all of Plaintiffs' assets, (ii) the issuance of joint and

several guarantees by each of the Debtors (whether or not a party to the Note Purchase Agreements,

Notes, or SR Agreement), and (iii) an offset on any fees that JSI owes to GWA or any other Debtor

under the IMA.

64.      Subject to proof, the Debtors plead that to the extent the Amended Forbearance

Agreement was not on account of an antecedent debt or were prepayments for goods and/or

14

services subsequently received by a particular Debtor, such Plaintiffs did not receive reasonably equivalent value in exchange for the Amended Forbearance Agreement, or the grant of security or additional compensation thereunder, either (a) because the value of the services and/or goods received was in fact less than the value of the Amended Forbearance Agreement or (b) because the Debtors that entered into the Amended Forbearance Agreement were not the parties (i.e. Plaintiffs) that had incurred or had any obligation for the debt, and the Debtors were: (i) insolvent on the dates of the Amended Forbearance Agreement or became insolvent as a result of the Amended Forbearance Agreement; and/or (ii) engaged in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital at the time of, or as a result of, the Amended Forbearance Agreement; and/or (iii) the Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

65.    By reason of the foregoing, the Amended Forbearance Agreement should be avoided and set aside as a fraudulent transfer.

### COUNT III - TO AVOID THE PERFECTED SECURITY INTERESTS AS PREFERENTIAL TRANSFERS AND/OR FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 547(b) AND 548(a)(1)(B)

66.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 65 above as if fully set forth herein.

67.    As set forth more fully above, the Amended Forbearance Agreement, and all transfers of property or obligations incurred thereunder, should be avoided and set aside as a preferential transfer pursuant to 11 U.S.C. § 547(b) and/or a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B).

68.    The Perfected Security Interests are a transfer of property of the Debtors' estates, and/or an incurrence of an obligation of the Debtors' estates, all without fair or reasonable

consideration therefor, and enabled Defendants to receive more than they would receive if (a) Plaintiffs' cases was cases under chapter 7 of the Bankruptcy Code, (b) the Amended Forbearance Agreement had not been made, and (c) Defendants received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

69.     By reason of the foregoing, the Perfected Security Interests, including any UCC-1 filing in furtherance thereof, resulting from the Amended Forbearance Agreement should also be avoided and set aside as either a preferential transfer or fraudulent transfer.

**COUNT IV - TO PRESERVE
PROPERTY PURSUANT TO 11 U.S.C. § 551**

70.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 69 above as if fully set forth herein.

71.     The interests and obligations incurred and/or transferred under the Amended Forbearance Agreement, including the Perfected Security Interests, are property of Plaintiffs' estates.

72.     Therefore, interests and obligations incurred and/or transferred under the Amended Forbearance Agreement, or the value thereof, should be preserved for the benefit of Plaintiffs' estates pursuant to § 551 of the Bankruptcy Code.

**COUNT V - TO RECOVER AVOIDABLE
TRANSFERS PURSUANT TO 11 U.S.C. § 550**

73.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 72 above as if fully set forth herein.

74.     Plaintiffs are entitled to avoid the Amended Forbearance Agreement, and any security interest therein, pursuant to 11 U.S.C. § 547(b) as a preferential transfer and the Amended Forbearance Agreement, and any security interest therein, pursuant to 11 U.S.C. § 548(a)(1)(B) as a fraudulent transfer.

16

75.      Defendants were an initial transferee of one or more of the interests and obligations incurred and/or transferred under the Amended Forbearance Agreement, the immediate or mediate transferee of such initial transferee, or the person for whose benefit the Amended Forbearance Agreement was made.

76.      Pursuant to 11 U.S.C. § 550(a), Plaintiffs are entitled to avoid the Amended Forbearance Agreement, including the Perfected Security Interests.

### COUNT VI - TO AVOID PREFERENTIAL TRANSFERS PURSUANT TO 11 U.S.C. § 547(b)

77.      Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 76 above as if fully set forth herein.

78.      During the Preference Period, Plaintiffs made the Avoidable Transfers to, or for the benefit of, the Defendants in the amount of $3,000,000.

79.      During the Preference Period, Defendants were creditors of Plaintiffs within the meaning of Bankruptcy Code section 547(b)(1) at the time of each Avoidable Transfer by virtue of the Note Purchase Agreements and the Notes for which Plaintiffs were obligated to pay in accordance with the Agreements.

80.      The Avoidable Transfers were transfers of an interest of Plaintiffs in property.

81.      According to the Debtors' books and records, the Avoidable Transfers were made to, or for the benefit of, Defendants because each Avoidable Transfer either reduced or fully satisfied a debt or debts then owed by Plaintiffs to Defendants.

82.      The Avoidable Transfers were made for or on account of antecedent debts owed by Plaintiffs to the Defendants.

83.      The Avoidable Transfers were made while Plaintiffs were insolvent.  Plaintiffs are entitled to the presumption of insolvency for each transfer made during the Preference Period

pursuant to 11 U.S.C. § 547(f).

84.    The Avoidable Transfers were made on or within ninety (90) days prior to the Petition Date.

85.    The Avoidable Transfers enabled Defendants to receive more than they would receive if (a) Plaintiffs' cases was cases under chapter 7 of the Bankruptcy Code, (b) the Avoidable Transfers had not been made, and (c) Defendants received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

86.    Defendants were either the initial transferee of the Avoidable Transfers, the entity for whose benefit the Avoidable Transfers were made, or were the immediate or mediate transferee of the initial transferee receiving the Avoidable Transfers.

87.    By reason of the foregoing, each Avoidable Transfer should be avoided and set aside as a preferential transfer pursuant to 11 U.S.C. § 547(b).

### COUNT VII - TO AVOID FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. § 548(a)(1)(B)

88.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 87 above as if fully set forth herein.

89.    The Avoidable Transfers were made within two (2) years prior to the Petition Date.

90.    The Avoidable Transfers were made to, or for the benefit of, the Defendants.

91.    Subject to proof, Plaintiffs plead that to the extent one or more of the Avoidable Transfers were not on account of an antecedent debt or were prepayments for goods and/or services subsequently received, Plaintiffs did not receive reasonably equivalent value in exchange for the Avoidable Transfers, either (a) because the value of the services and/or goods received was in fact less than the Avoidable Transfers or (b) because the Debtors that received such goods and/or services were not the parties (i.e. Plaintiffs) that had incurred the debt, and Plaintiffs were:

18

(i) insolvent on the dates of the Avoidable Transfers or became insolvent as a result of the Avoidable Transfers; and/or (ii) engaged in business or a transaction for which any property remaining with Plaintiffs was an unreasonably small capital at the time of, or as a result of, the Avoidable Transfers; and/or (iii) Plaintiffs intended to incur, or believed that Plaintiffs would incur, debts that would be beyond Plaintiffs' ability to pay as such debts matured.

92.    By reason of the foregoing, the Avoidable Transfers should be avoided and set aside as fraudulent transfers.

## COUNT VIII - TO PRESERVE
## PROPERTY PURSUANT TO 11 U.S.C. § 551

93.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 92 above as if fully set forth herein.

94.    The Avoidable Transfers are property of Plaintiffs' estates.

95.    Therefore, the Avoidable Transfers, or the value thereof, should be preserved for the benefit of Plaintiffs' estates pursuant to § 551 of the Bankruptcy Code.

## COUNT IX - TO RECOVER AVOIDABLE
## TRANSFERS PURSUANT TO 11 U.S.C. § 550

96.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 95 above as if fully set forth herein.

97.    Plaintiffs are entitled to avoid the Avoidable Transfers pursuant to 11 U.S.C. § 547(b), and the Avoidable Transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

98.    Defendants were an initial transferee of one or more of the Avoidable Transfers, the immediate or mediate transferee of such initial transferee, or the person for whose benefit one or more of the Avoidable Transfers were made.

99.    Pursuant to 11 U.S.C. § 550(a), Plaintiffs are entitled (i) to avoid the Amended Forbearance Agreement and (ii) to recover from Defendants an amount to be determined at trial

that is not less than the amount of the Avoidable Transfers as set forth on <u>Schedule 1</u> hereof, plus

interest thereon to the date of payment and the costs of this action.

### COUNT X - TO DISALLOW
### <u>CLAIMS PURSUANT TO 11 U.S.C. § 502(d)</u>

100.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1

through 99 above as if fully set forth herein.

101.    Defendants are entities from which property is recoverable under 11 U.S.C. § 550.

102.    Defendants are the initial transferees of the Amended Forbearance Agreement

and/or Avoidable Transfers, the immediate or mediate transferee of such initial transferee, or the

person for whose benefit the Amended Forbearance Agreement was entered into, or one or more

of the Avoidable Transfers were made.

103.    Defendants have not paid the amount of any one of the Avoidable Transfers, or

turned over such property, for which Defendants are liable under 11 U.S.C. § 550.

104.    Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendants and/or their

assignees, against the Debtors' Chapter 11 estate or the Debtors must be disallowed until such time

as the Amended Forbearance Agreement is deemed null and void and/or the Defendants pay to

Plaintiffs all amounts sought for the Avoidable Transfers as set forth above.

*[Continued on Next Page]*

**WHEREFORE**, for the foregoing reasons, Plaintiffs respectfully request that this

Court enter judgment against Defendants:

a) avoiding the Amended Forbearance Agreement, including the Perfected Security Interests arising thereunder, as a Preferential Transfer pursuant to 11 U.S.C. § 547(b), or, in the alternative, as a Fraudulent Transfer pursuant to 11 U.S.C. § 548(a)(1)(B);

b) avoiding the Avoidable Transfers as Preferential Transfers pursuant to 11 U.S.C. § 547(b), or, in the alternative, as Fraudulent Transfers pursuant to 11 U.S.C. § 548(a)(1)(B);

c) preserving for the benefit of the Debtors' estate interests or obligations purportedly transferred under the Amended Forbearance Agreement, the Perfected Security Interests and/or the Avoidable Transfers or the value thereof pursuant to 11 U.S.C. § 551;

d) pursuant to 11 U.S.C. § 550(a), directing (a) that the Amended Forbearance Agreement, and the Perfected Security Interests arising thereunder, is null and void and/or (b) Defendant to pay to Plaintiffs an amount to be determined at trial that is not less than the aggregate amount of the Avoidable Transfers as set forth on Schedule 1 hereof, plus interests and costs;

e) disallowing any Claim of Defendant against the Debtors pursuant to 11 U.S.C. § 502(d);

f) requiring Defendants to pay forthwith the amount of the Judgment; and

g) granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 29, 2024

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By: */s/John E. Jureller, Jr.*
Tracy L. Klestadt
John E. Jureller, Jr.
Lauren C. Kiss
Stephanie R. Sweeney
200 West 41st St., 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Email: tklestadt@klestadt.com
jjureller@klestadt.com
lkiss@klestadt.com
ssweeney@klestadt.com

## SCHEDULE 1

| Transferor | Transferee | Date | Amount |
|---|---|---|---|
| GWA, LLC | JSI | 4/29/2022 | $5,000,000 |
| GWA, LLC | JSI | 7/29/2022 | $10,000,000 |
| GWA, LLC | JSI | 11/28/2023 | $2,000,000 |
| OGI Associates, LLC[5] | JSI | 2/15/2024 | $3,000,000 |
| | | | $20,000,000 |

---

[5] This amount was paid by OGI Associates, LLC on behalf of GWA, LLC.