**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>WEISS MULTI-STRATEGY ADVISERS LLC, *et al.,*<br><br>                              Debtors. | **NOT FOR PUBLICATION**<br><br>Case No. 24-10743 (MG)<br><br>Chapter 11 |

**MEMORANDUM OPINION AND ORDER GRANTING DEBTORS' MOTION FOR AN ORDER EXTENDING EXCLUSIVE PERIODS DURING WHICH THE DEBTORS MAY FILE A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THERETO**

**A P P E A R A N C E S :**

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
*Attorneys for the Debtors*
200 West 41st Street, 17th Floor
New York, New York 10036
By:    Tracy L. Klestadt, Esq.
         John E. Jureller, Jr, Esq.
         Lauren C. Kiss, Esq.
         Stephanie R. Sweeney, Esq.

HERBERT SMITH FREEHILLS NEW YORK LLP
*Attorneys for Jefferies Strategic Investments, LLC,*
*Leucadia Asset Management Holdings LLC, and Jefferies LLC*
200 Park Avenue
New York, New York 10166
By:    Scott S. Balber, Esq.
         Michael P. Jones, Esq.
         Daniel Gomez, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

       Pending before the Court is the contested motion (the "Motion," ECF Doc. # 144) of Weiss Multi-Strategy Advisers LLC ("WMSA"), GWA, LLC ("GWA"), OGI Associates LLC ("OGI"), and Weiss Special Operations LLC ("WSO" and together with WMSA, GWA and OGI, the "Initial Debtors") and Weiss Multi-Strategy Funds LLC ("WMSF" or the "New Debtor" and together with the Initial Debtors, the "Debtors"). The Motion seeks entry of an

order extending the exclusive periods during which the Debtors may file a chapter 11 plan and solicit acceptances thereto for approximately 120 days from August 27, 2024 and October 28, 2024 (the "Initial Debtors Deadlines") to December 27, 2024 and February 24, 2025, respectively.[1]

On August 6, 2024, Jefferies Strategic Investments, LLC, Leucadia Asset Management Holdings LLC, and Jefferies LLC (collectively, the "Jefferies Entities") filed an opposition to the Motion (the "Jefferies Opposition," ECF Doc. # 164). Annexed to the Jefferies Opposition as Exhibit A is the supporting declaration of Scott. S. Balber, a partner at Herbert Smith Freehills LLP (the "Balber Declaration," ECF Doc. # 164-1). On August 9, 2024, the Debtors filed a reply (the "Debtors' Reply," ECF Doc. # 169). A hearing on the Motion was held on August 13, 2024.

For the reasons discussed below, the Court **OVERRULES** the Jefferies Opposition and **GRANTS** the Motion. The Court also **ORDERS** that Debtors file an updated Status Report (defined below), on or before 12:00 noon, Friday, August 16, 2024, on their wind-down progress.

## I.   BACKGROUND

### A.  The Chapter 11 Cases

On April 29, 2024 (the "Initial Debtors Petition Date"), the Initial Debtors each filed voluntary petitions for chapter 11 relief. (Motion ¶ 5.) On June 19, 2024 (the "New Debtor Petition Date"), the New Debtor filed a voluntary chapter 11 petition for relief. (*Id.* ¶ 6.) The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to

---

[1]   The New Debtor's exclusive period to file a chapter 11 plan and seek acceptances and rejections thereof expires on October 17, 2024 and December 16, 2024, respectively. (Motion at 2.)

2

sections 1107 and 1108 of the Bankruptcy Code. (*Id.* ¶ 7.) No request for the appointment of a trustee has been made and no official committees have been appointed or designated. (*Id.* ¶ 8.)

The Debtors' cases are being jointly administered. (*See Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing Joint Administration of Chapter 11 Cases*, ECF Doc. # 51; *Order Directing Certain Orders in Chapter 11 Cases of Weiss Multi-Strategy Advisers LLC, et al. Be Made Applicable to Weiss Multi-Strategy Funds LLC*, ECF Doc. # 120.)

On July 2, 2024, the Court entered an order (the "Bar Date Order," ECF Doc. # 128), establishing August 23, 2024 as the general bar date (the "General Bar Date") and December 16, 2024 as the governmental bar date (the "Governmental Bar Date"). (*Id.* ¶ 11.)

### B. The Motion

The Motion seeks entry of an order extending the 120-day period during which only the Debtors may file a plan and the 180-day period during which the Debtors may solicit acceptances to any such plan (collectively, the "Exclusive Periods"), each by approximately 120 days from the Initial Debtors Deadlines, through and including December 27, 2024 and February 24, 2025, respectively, pursuant to section 1121(d) of the Bankruptcy Code. (*Id.* ¶ 12.) Absent such extension, the Initial Debtors' exclusive filing period will expire on August 27, 2024, and the Initial Debtors' exclusive solicitation period will expire on October 28, 2024. (*Id.*)

The Debtors submit that cause exists to extend the Exclusive Periods for the following reasons:

- Less than three months have passed since the Initial Debtors Petition Date.

- Until the General Bar Date and Governmental Bar Date have passed, the Debtors will not know what claims have been filed. Extension of the Exclusive Periods will provide the Debtors an opportunity to analyze the full universe of claims against the Debtors' estates prior to proposing a chapter 11 plan.

- This request to extend the Debtors' Exclusive Periods is the Debtors' first request, and the Debtors expect to file a confirmable chapter 11 plan within the time provided if this first

3

request is approved.

- The Debtors are not seeking an extension of their Exclusive Periods to exert pressure on any party.

- The Debtors submit that they are proceeding diligently towards "completion of the Chapter 11 Cases" and intend to propose a plan "as soon as practicable."

(*Id.* ¶¶ 20–21.)  The Debtors reserve the right to seek further extensions "to the extent necessary under the circumstances." (*Id.* ¶ 22.)

### C. The Jefferies Opposition

The Jefferies Entities oppose the Motion on grounds that the Debtors have failed to establish cause for the relief requested.  (Jefferies Opposition ¶¶ 5–6.)  *First*, the Jefferies Entities state that five of the nine factors courts consider in connection with the Debtors' requested relief "indisputably" weigh against extending the Exclusive Periods:

- Factor 1: The chapter 11 cases "are not particularly complex" as the Debtors are no longer functioning, have no assets to decide to keep or sell, no unexpired leases or executory contracts to assume or reject, no employees to decide to retain or discharge, and no business to restructure (*id.* ¶ 25).

- Factors 3, 5, and 6: The Debtors have made "no progress towards any reorganization . . . much less towards the filing of a viable plan," including not even attempting to engage with the Jefferies Entities (*id.* ¶ 26).

- Factor 4: The Debtors have "effectively admitted" that they "will not be able to pay their bills as they come due" as reflected by their debtor-in-possession financing motion (the "DIP Motion," ECF Doc. # 156), which shows that even with such financing, the Debtors will burn through all available cash by the end of September and still owe in excess of $2.75 million in additional unfunded liabilities (*id.* ¶ 27).

*Second*, the Jefferies Entities contend that the Debtors' showing of "good cause" is also insufficient and the remaining four factors weigh against extending the Exclusive Periods.  (*Id.* ¶¶ 29, 30, 33.)  That this is the Debtors' first request for an extension of exclusivity alone is insufficient to justify an extension of the Exclusive Periods, and the Debtors' belief that this would justify an extension is "legally deficient." (*Id.* ¶ 31.)  The Debtors, the Jefferies Entities

4

contend, also fail to explain how and why additional time is needed for the Debtors to negotiate a plan of reorganization. (*Id.* ¶ 32.) The Jefferies Entities state that this failure is compounded by the Debtors' past representation that "nearly all of the work necessary to assess the Debtors' financial condition was supposed to have been completed before the end of July, 2024." (*Id.* (citing *Declaration of Michele Lanzoni in Support of Debtors' Opposition to Motion of Jefferies Strategic Investments LLC and Leucadia Asset Management Holdings LLC for Conversion of the Debtors' Cases to Chapter 7 Pursuant to 11 U.S.C. § 1112(b)*, ECF Doc. # 41).)

The Jefferies Entities further note that the Debtors have "failed to explain how any theoretical change in the claim pool would alter their ability to formulate a plan." (*Id.* ¶ 33.) They also state that, even if the Debtors were to do so and/or point to pending litigation against the Jefferies Entities, that alone would be insufficient to justify a granting of relief. (*Id.*) Finally, the Jefferies Entities argue that the Debtors have also failed to offer any evidence to support their blanket assertion that the Motion is not being brought "to exert pressure on any party." (*Id.* ¶ 34 (quoting Motion ¶ 20(d)).)

## II. LEGAL STANDARD

Section 1121(b) and (c) of the Bankruptcy Code provide, respectively, that a debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case and the exclusive right to solicit votes for its plan for an additional 60 days. 11 U.S.C. §§ 1121(b) and (c). "[T]he point of exclusivity is to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." *In re Burns and Roe Enters., Inc.*, No. 00-41610 (RG), 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (internal quotations and citations omitted).

5

Section 1121(d) of the Bankruptcy Code authorizes a bankruptcy court to extend a debtor's exclusive period for filing a chapter 11 plan and to solicit votes "for cause" shown by as much as 18 months and 20 months, respectively. 11 U.S.C. § 1121(d). Determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity. *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006) ("A decision to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court, and is fact-specific."); *see also In re Lehigh Valley Pro. Sports Club, Inc*, No. 00-11296 (DWS), 2000 WL 290187, at *2 (Bankr. E.D. Pa. Mar. 14, 2000) (relief under section 1121(d) is committed to the sound discretion of the bankruptcy judge); *In re Sharon Steel Corp.*, 78 B.R. 762, 763 (Bankr. W.D. Pa. 1987) ("The decision [of] whether or not to extend the debtor's period of exclusivity rests with the discretion of the court."). The moving party bears the burden of establishing that cause exists for an extension of exclusivity under Section 1121(d) of the Bankruptcy Code. *In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

Although the Bankruptcy Code does not define "cause," the legislative history indicates that "cause" is intended to be a flexible standard that balances the competing interests of a debtor and its creditors. *See* H.R. REP. NO. 95-595, at 231–32 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191. This flexibility is intended to give the debtor an adequate opportunity to stabilize its business operations at the outset of the case and then to negotiate a plan with its creditors. *See In re Ames Dep't Stores Inc.*, No. 90 B 11233 (JAG), 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors."). Where "the [d]ebtors have shown the requisite good cause for an exclusivity extension . . . [and] have given the Court no reason to believe that they

6

are abusing their exclusivity rights . . . the requested extension of exclusivity should . . . be granted." *In re Glob. Crossing Ltd.*, 295 B.R. 726, 730 (Bankr. S.D.N.Y. 2003).

Generally, courts will consider the following factors in determining whether "cause" exists to extend a debtor's exclusive periods:

- the size and complexity of the case;
- the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;
- the existence of good-faith progress toward reorganization;
- the fact that the debtor is paying its bills as they come due;
- whether the debtor has demonstrated reasonable prospects for filing a viable plan;
- whether the debtor has made progress in its negotiations with creditors;
- the amount of time that has elapsed in the case;
- whether the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and
- whether an unresolved contingency exists.

*Adelphia*, 352 B.R. at 587; *see also In re Lionel LLC*, No. 04-17324, 2007 WL 2261539, at *6 (Bankr. S.D.N.Y. Aug. 3, 2007) (same); *In re Borders Grp., Inc.*, 460 B.R. 818, 822 (Bankr. S.D.N.Y. 2011) (same).

Not all of these factors are relevant in every case, and a finding that any number of these factors exists may justify extending a debtor's exclusive periods. *See Adelphia*, 352 B.R. at 590 (noting that the foregoing factors may not, in every case, by themselves be determinative)*; see also, e.g.*, *In re Express One Int'l, Inc.*, 194 B.R. 98, 100–01 (Bankr. E.D. Tex. 1996) (four factors relevant in determining whether cause exists to extend exclusivity); *Matter of Interco, Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (four factors showed that bondholders' committee failed to show cause to terminate debtors' exclusivity). Rather, the "primary

7

consideration for the court in determining whether to terminate the debtor's exclusivity is whether its termination will move the case forward." *Adelphia*, 352 B.R. at 590.

### III.    DISCUSSION

The Court finds that cause exists to extend the Exclusive Periods.

**A. Size and Complexity of the Case**

While the Debtors do not address this factor in the Motion, it is evident from case history and the events leading up to the filing of these chapter 11 cases that this factor supports granting an extension. These chapter 11 cases involve multiple debtors and a hotly contested dispute with the Jefferies Entities. Indeed, it is this dispute that is the subject of an adversary proceeding (the "Adversary Proceeding," Adv. Pro. No. 24-01350) where the Debtors have asserted several causes of action against the Jefferies Entities, including claims to recover certain transfers made. A hearing in the Adversary Proceeding is currently scheduled for September 11, 2024, at 11:00 a.m. An extension would provide the Debtors additional time to address the dispute with the Jefferies Entities that will hopefully assist in the Debtors' exit from chapter 11.

Moreover, this Court already concluded in its decision denying the Jefferies Entities' motion to convert (the "Motion to Convert Decision," ECF Doc. # 50) that these chapter 11 cases extend to matters beyond the immediate dispute between the Debtors and the Jefferies Entities. *In re Weiss Multi-Strategy Advisers LLC*, No. 24-10743 (MG), 2024 WL 2767893, at *13 (Bankr. S.D.N.Y. May 29, 2024) ("[T]he Debtors have made clear that the chapter 11 cases involve matters that fall outside the scope of the immediate dispute between the Debtors and the Jefferies Entities . . . [and] involve other creditors and stakeholders . . . ."). A review of the Debtors' filed schedules confirms this. For example, Schedule E/F for debtor WMSA (ECF Doc. # 72 at 19–59) lists 35 creditors with priority unsecured claims and 216 creditors with nonpriority unsecured claims while Schedule E/F for debtor GWA (ECF Doc. # 73 at 16–18)

8

lists 11 creditors with nonpriority unsecured claims. In addition to the foregoing, the Debtors' claims register reflects that, to date, 23 proofs of claim have been filed, including claims from the Internal Revenue Service, various individuals, and entities such as Concur Technologies, Inc., Pennant Networks, LLC, and IPC Systems Inc.

While it is true that the Debtors are winding down, the wind-down process is nonetheless complicated by the various reporting and regulatory requirements that the Debtors are subject to. On June 27, 2024, the Debtors filed the *Status Report of Michele M. Lanzoni, Controller of Weiss Multi-Strategy Advisers LLC, GWA, LLC, OGI Associates LLC, and Weiss Special Operations LLC, and Chief Financial Officer of Weiss Multi-Strategy Funds LLC* (the "Status Report," ECF Doc. # 113). Exhibit A to the Status Report sets forth an extensive and detailed seven-page list of items that the Debtors "are in the process of completing or will need to complete in the future to wind down their affairs." (Status Report ¶ 6.) These items include regulatory reporting, tax filings, and matters relating to fund accounting, technology, personnel, and general operations. (*See id.*, Ex. A.)

Aside from the foregoing, the Debtors are also seeking the appointment of an independent examiner in these chapter 11 cases to aid the Debtors in determining whether they hold any potential claims against insiders. Indeed, the Jefferies Entities support such an appointment, conceding in their limited objection (the "Jefferies Limited Objection to Examiner Motion," ECF Doc. # 163) that such an independent examiner is "needed." (Jefferies Limited Objection to Examiner Motion ¶ 3.) They go so far as to propose that such an investigation be "broadened to include any other potentially preferential or fraudulent transfers that were made to the Debtors' insiders," including George Weiss. (*Id.*)

9

In support of its argument that this first factor is not satisfied, the Jefferies Entities cite to *In re GMG Cap. Partners III, L.P.*, 503 B.R. 596 (Bankr. S.D.N.Y. 2014), where the court concluded that this factor weighed against granting an extension to the debtors. (*See* Jefferies Opposition ¶ 25.) There, the court's determination that the debtors' cases were "small and uncomplicated" rested on its finding that, aside from the debtors' portfolio as their sole asset, such debtors possessed:

> No other assets that it must decide to keep or sell, no unexpired leases or executory contracts that it must decide to assume or reject, no employees it must decide to retain or discharge and no business to restructure. In addition, there [were] no secured or priority creditors, and only a handful of unsecured creditors.

*GMG Cap.*, 503 B.R. at 601 (footnote omitted). Indeed, the court noted that neither of the two initial debtors that commenced the chapter 11 cases listed any unexpired leases or executory contracts in their respective schedules. *Id.* at 601 n.8. That is unlike the case here, where the Debtors must ensure that their wind down complies with governing regulatory requirements as well as address issues relating to the Jefferies Entities and their priority and non-priority unsecured creditors, which include government agencies. Moreover, Debtor WMSA, for example, lists 50 executory contracts and unexpired leases in its Schedule G that it will also need to address. (*See* ECF Doc. # 72 at 60–70.)

Accordingly, the first factor weighs in favor of granting an extension of the Exclusive Periods. However, the Court **ORDERS** that an updated Status Report be filed to keep all parties apprised of the Debtors' progress.

### B. Necessity of Sufficient Time to Permit Debtor to Negotiate a Plan and Prepare Adequate Information

The Jefferies Entities contend that this factor does not weigh in favor of granting an extension of the Exclusive Periods. Specifically, they argue that the Debtors' assertion that the

10

Motion constitutes their first extension request is alone insufficient to satisfy this factor, and the Debtors have otherwise failed to explain why additional time is needed. (Jefferies Opposition ¶¶ 31–32.) The Jefferies Entities' position is unavailing, as the Debtors have offered an explanation for why additional time is needed, which supports a finding that this factor weighs in favor of granting the requested relief..

While it may be true that courts do not rubber stamp first-time requests for extensions of exclusivity, the Debtors have submitted that additional time is needed, in part, to provide the Debtors an opportunity to analyze the "full universe of claims" before they can proceed with proposing a chapter 11 plan. (Motion ¶ 20; *see also* Debtors' Reply at 4.) *See, e.g.*, *GMG Cap.*, 503 B.R. at 601 (noting that "courts have not hesitated to deny a first motion to extend exclusivity where the circumstances warrant it" (citing references)). Indeed, the General Bar Date and Governmental Bar Date have not yet passed, and the Debtors do not yet know what claims will be filed. (Motion ¶ 20.) The Debtors further indicate that ascertaining the full universe of claims will also enable the Debtors to determine whether the claims of the Jefferies Entities should be separately classified. (Debtors' Reply at 4.) Rather than acknowledging this, the Jefferies Entities have, instead, categorized the explanation the Debtors have provided as relating to factor nine, which goes to whether there is an "unresolved contingency." (Jefferies Opposition ¶ 33.)

This Court previously found that the foregoing reason supports factors 2 (need for additional time to negotiate a plan), 7 (time elapsed), and 9 (unresolved contingencies). In *Borders Group*, this Court stressed the importance of a bar date to permit a debtor to "understand the number, nature and amount of valid claims against the estate," and recognized that a debtor "need[s] a reasonable amount of time to review and evaluate these claims." *Borders Grp.*, 460

11

B.R. at 826.  Indeed, this Court found that, absent such information, it would be "difficult for the Debtors to prepare adequate information." *Id.* (citation omitted).  The Court concluded that, coupled with the debtors' efforts to continue to pare down their cases, the debtors should be afforded an opportunity to "present creditors with a more refined business model and projections for future operations—all of which are necessary for filing both a disclosure statement and plan." *Id.*

Given the complicated nature of the Debtors' wind-down efforts, the Debtors should be given a chance to pursue an orderly liquidation process that will undoubtedly require a proper evaluation of claims asserted against their estates.  The Jefferies Entities have also argued that the Debtors have failed to explain why "nearly all of the work necessary to assess the Debtors' financial condition [that] was supposed to have been completed before the end of July, 2024" was not done.  (Jefferies Opposition ¶ 32.)  Nonetheless, the Jefferies Entities themselves concede that, "[a]s best [they] are aware, the Debtors have continued to pursue the liquidation of assets and winding down, *consistent with the Debtors' prior representations*."  (Jefferies Opposition ¶ 13 (emphasis added).)  The Debtors have represented that they will be able to file a chapter 11 plan within the time provided by the request set forth herein, and they should be afforded an opportunity to do so.

The Debtors have further indicated that additional time is needed to enable them to (i) determine how to properly value and liquidate OGI's interests in certain retransferred notes (the "OGI Portuguese Bonds"), and (ii) evaluate whether any valid preferential or fraudulent transfer claims exist in connection with the annual bonus compensation payments that were made in February 2024.  (*See* Debtors' Reply at 4.)  Presently, the Debtors are in discussions regarding

the possible sale of the OGI Portuguese Bonds and have filed a motion for the appointment of an examiner. (*Id.* at 5.) The foregoing reasons also support a finding that additional time is needed.

Accordingly, this factor weighs in favor of extending the Exclusive Periods.

### C. Substantial Good Faith Progress Has Been Made

The Debtors submit that they are "proceeding diligently" towards completion of these chapter 11 cases and intend to propose a plan "as soon as practicable" despite this case having been commenced less than three months since the Initial Debtors Petition Date. (Motion ¶¶ 20–21.) The Jefferies Entities contend, instead, that this factor is not satisfied because the Debtors are winding down and not reorganizing. (Jefferies Opposition ¶ 26.) This factor, however, is focused on a debtor's "good faith efforts to achieve emergence." *Adelphia*, 352 B.R. at 588. As the Court recognized in the Motion to Convert Decision, "[t]here is nothing improper about the Debtors seeking chapter 11 to implement a wind down of their businesses and operations that would enable them to do so in an efficient and orderly manner that also complies with governing regulations and is in accordance with their fiduciary duties." *Weiss Multi-Strategy*, 2024 WL 2767893, at *13.

Given that the Jefferies Entities themselves concede that "the Debtors have continued to pursue the liquidation of assets and winding down, consistent with the Debtors' prior representations," there is no reason to suspect that the Debtors are not operating in good faith in their efforts to liquidate. (Jefferies Opposition ¶ 13.) Indeed, the Debtors have filed the Status Report detailing their progress and represented that they have "taken significant steps so that a plan of liquidation can be proposed as soon as reasonably practicable," including obtaining the entry of the Bar Date Order, engaging in discussions for the potential sale of the OGI Portuguese Bonds, and seeking the appointment of a third-party examiner. (Debtors' Reply at 4–5.)

Accordingly, this factor also weighs in favor of granting an extension.

13

### D. The Debtors Are Paying Debts as They Become Due

The Jefferies Entities contend that the Debtors have "effectively admitted that they will not be able to pay their bills as they become due" as they are concurrently seeking Court approval of a $1 million debtor-in-possession facility (the "DIP Facility"). (Jefferies Opposition ¶ 27; *see also* DIP Motion.) It is for this reason, they argue, that this factor weighs against extending the Exclusive Periods.

However, the Jefferies Entities have not pointed to any evidence that indicates that the Debtors are not *currently* paying their bills as they become due, which is the focus of this particular factor. *See Adelphia*, 352 B.R. at 588 (finding that this factor does not warrant terminating exclusivity because "the Debtors have *consistently* met their financial obligations" (emphasis added)). In assessing whether this factor is satisfied, courts will look to whether the "debtor *is* paying its bills *as they become due*." *Id.* at 587 (emphasis added); *see also GMG Cap.*, 503 B.R. at 601 (looking to whether the debtor was paying its bills at the time). While the Debtors are seeking approval of the proposed DIP Facility to ensure that they can meet their future obligations, it does not necessarily mean that they are currently unable meet their obligations.

Debtors' counsel represented that the Debtors are current on making all post-petition payments. This factor weighs in favor of granting an extension as well. *See Adelphia*, 352 B.R. at 588 (noting that this factor is "more of a factor if it were not satisfied").

### E. The Debtors Have Reasonable Prospects for Filing a Viable Plan

The Debtors indicate that they have been "proceeding diligently" and will likely be able to propose a "acceptable" plan within the extended Exclusive Periods (if their request is granted). (Motion ¶¶ 21–22; *see also* Debtors' Reply at 4 (stating that the Debtors are working towards proposing a plan of liquidation "as soon as reasonably practicable").) Meanwhile, the Jefferies

14

Entities contend that this factor is not met because the Debtors do not contemplate reorganizing and are seeking liquidation instead. (Jefferies Opposition ¶ 26.)

Again, this Court recognized in the Motion to Convert Decision, that "[t]here is nothing improper about the Debtors seeking chapter 11 to implement a wind down of their businesses and operations that would enable them to do so in an efficient and orderly manner that also complies with governing regulations and is in accordance with their fiduciary duties." *Weiss Multi-Strategy*, 2024 WL 2767893, at *13. Moreover, given that the General and Governmental Bar Dates have not yet passed, it is premature at this time to conclude that the Debtors are unlikely to submit a viable plan. These chapter 11 cases involve multiple other creditors in addition to the Jefferies Entities. Unlike *GMG Capital*, where the court saw no possible feasible plan that the debtors could have proposed, it is too early here to make a similar determination.[2] The Jefferies Entities have also failed to explain why a chapter 11 liquidation plan would not be "viable" and do not otherwise deny that the Debtors have been making progress in their wind-down efforts "consistent with [their] prior representations." (Jefferies Opposition ¶ 13.)

Accordingly, this factor too weighs in favor of granting an extension.

### F. Negotiation Progress with Creditors

In support of their Motion, the Debtors note that the General and Governmental Bar Dates have not yet passed and, therefore, they do not know what claims have been filed. (Motion ¶ 20.) However, they indicate that they intend to "analyze the full universe of claims" once these deadlines pass. (*Id.*) The Jefferies Entities instead contend that this factor is not satisfied because the Debtors "have not attempted to engage with the Jefferies Entities—

---

[2] In *GMG Capital*, a single creditor held nearly 90% of the debtors' unsecured debt. The court determined that the unsecured class would be the only impaired class that would be entitled to vote as the debtors did not otherwise demonstrate the wherewithal to leave this class unimpaired and did not believe the debtors could separately classify this creditor. *See GMG Cap.*, 503 B.R. at 602.

15

collectively, the Debtors' largest creditors—regarding a potential plan." (Jefferies Opposition ¶ 26.)

Simply because the Debtors have not engaged with one particular group of creditors is not fatal to an extension of exclusivity at this juncture. These chapter 11 cases, which the Court noted are complicated in nature and involve creditors other than the Jefferies Entities, have only been pending for three months. Moreover, the Debtors need an opportunity to grasp the "full universe" of claims that they are contending with, which they indicate will also aid them in determining how to classify the Jefferies Entities' claims. Therefore, an extension of the Exclusive Periods is warranted to permit the Debtors a chance to assess the claims pool and negotiate with creditors, including the Jefferies Entities.

Accordingly, this factor weighs in favor of granting an extension as well.[3]

### G. Time Elapsed

These chapter 11 cases have been pending for approximately three months. As discussed, the Debtors have been working towards bringing these cases to closure and intend to file and solicit a plan within the Exclusive Periods to the extent the Court grants the requested relief. (Motion ¶ 20.) Given the complexity of these chapter 11 cases and the extent of issues of that need resolution in compliance with the governing regulatory scheme, this factor also weighs in favor of extending the Exclusive Periods.

### H. No Evidence that the Debtors Are Seeking an Extension to Pressure Creditors

The Debtors submit that they are not seeking this relief to "exert pressure on any party." (Motion ¶ 20.) The Jefferies Entities argue that the Debtors' statement is entirely conclusory

---

[3] When asked at the August 13 hearing whether counsel for the Debtors and the Jefferies Entities have engaged in discussions about resolving their disagreements—which largely resulted in the filing of these cases—the answer was no. The Court encouraged them to begin a necessary dialogue.

without any evidence or case law to support the notion that this alone would justify extending the Exclusive Periods. (Jefferies Opposition ¶ 34.)

In evaluating this factor, courts look to whether a debtor is seeking an extension of exclusivity "in order to pressure creditors to submit to the debtor's reorganization demands." *Adelphia*, 352 B.R. at 589. While the Debtors here intend to liquidate, there is no evidence that they are seeking exclusivity to make the Jefferies Entities bend to their will and command. Indeed, the Jefferies Entities are fully aware that the Debtors are engaged in a wind-down process. Rather, as discussed, the Debtors state that additional time is needed, among other things, to provide them an opportunity to evaluate the universe of claims and to address the OGI Portuguese Bonds. The Debtors believe that they will be able to propose a confirmable plan within the requested extension. As noted above, this case is not a two-party dispute; there appear to be other creditors whose claims the Debtors will need to address.

Accordingly, this factor weighs in favor of granting an extension of the Exclusive Periods.

### I. Unresolved Contingencies

"Generally, an unresolved contingency refers to some event external to the case that must occur or not occur in order for the case to succeed." *GMG Cap.*, 503 B.R. at 603 (citing *In re Dow Corning Corp.*, 208 B.R. 661, 666 (Bankr. E.D. Mich. 1997)). Here, no "unresolved contingency" has been identified in the Motion and any potential unresolved contingency (*i.e.*, whether the DIP Facility will be approved, what the universe of claims will look like) appears internal to the bankruptcy process.

Accordingly, this factor is neutral.

17

## IV. CONCLUSION

For the reasons discussed above, the Motion is **GRANTED.** The Court **ORDERS** that Debtors file an updated Status Report on their wind-down progress on or before 5:00 p.m., August 16, 2024.

**IT IS SO ORDERED.**

Dated:   August 14, 2024
         New York, New York

                                              *Martin Glenn*
                                            MARTIN GLENN
                             Chief United States Bankruptcy Judge