**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>WEISS MULTI-STRATEGY ADVISERS LLC, *et al.*,<br><br>                            Debtors. | <u>NOT FOR PUBLICATION</u><br><br>Case No. 24-10743 (MG)<br><br>Chapter 11 |

**MEMORNDUM OPINION AND ORDER DENYING MOTION TO TRANFER VENUE OF GEORGE ALLEN WEISS'S BANKRUPTCY CASE TO THIS COURT**

*A P P E A R A N C E S:*

HERBERT SMITH FREEHILLS NEW YORK LLP
*Attorneys for Jefferies Strategic Investments, LLC and*
*Leucadia Asset Management Holdings LLC*
200 Park Avenue
New York, New York 10166
   By:    Scott S. Balber, Esq.
            Michael P. Jones, Esq.
            Daniel Gomez, Esq.

VENABLE LLP
*Attorneys for George Allen Weiss*
801 Brickell Avenue, Suite 1500
Miami, Florida 33131
   By:    Paul J. Battista, Esq.
            Mariaelena Gayo-Guitian, Esq.
            Eric D. Jacobs, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

      Pending before the Court is a motion ("Motion," ECF Doc. # 394), filed by Jefferies Strategic Investments LLC and Leucadia Asset Management Holdings LLC (together, "Jefferies Entities"), to transfer the venue of George Allen Weiss's ("Weiss") bankruptcy proceeding to this Court, where the chapter 11 cases of Weiss Multi-Strategy Advisers, LLC and its related debtors (together, "Weiss Companies") are pending. Weiss filed an objection to the Motion ("Objection," ECF Doc. # 409), and the Movants filed a reply ("Reply," ECF Doc. # 415).

For the following reasons, the Motion is **DENIED**.

## I. BACKGROUND

### A. Background

The facts, unless otherwise noted, are drawn from the Motion and are supported by the exhibits and declarations attached to the Motion.

Weiss is the Chairman and Chief Executive Officer of WMSA, an investment advisory entity which manages the Weiss Companies' funds. (Motion ¶ 8.) Separately, through his family trusts, Weiss owns a controlling stake in the Weiss Companies' parent entity, GWA. (*Id.*) From 2018 to 2022, the Weiss Companies entered into several agreements with the Jefferies Entities, including a "Strategic Relationship Agreement" and a series of "Note Purchase Agreements" pursuant to which JSI acquired $53 million in notes (the "Notes") issued by GWA and WMSA. (*Id.* ¶ 9.) On December 21, 2023, JSI delivered a Notice of Optional Redemption under the Notes. (*Id.* ¶ 10.) As a result, GWA was required to pay to JSI $54,223,110, comprising all outstanding aggregate principal and interest on the Notes, on December 31, 2023; GWA did not pay. (*Id.*) Accordingly, as of December 31, 2023, JSI had the right to commence litigation against GWA to compel it to repay the amounts that were owed under the Notes. (*Id.*) After a series of further negotiations, Weiss and his counsel negotiated and signed—in his personal capacity and on behalf of all the Weiss Companies—a forbearance agreement (the "Forbearance Agreement"). (*Id.* ¶ 15.) Weiss agreed to a personal guarantee of the Weiss Companies' performance under the Forbearance Agreement, which provides as follows:

> Weiss unconditionally and irrevocably personally guarantees to the Jefferies Entities the accuracy of the representations made by, and the performance of the agreements of, the [Weiss Companies] hereunder. Weiss further agrees that he shall take all actions within his control, including by exercising all of his voting, governance, management and other rights and powers with respect to each of the

2

> other Weiss Parties, any of their subsidiaries and any of his personal or his family's trusts to cause such persons to comply with the terms of this Agreement.

(*Id.* ¶ 16.) The Forbearance Agreement also contained a mandatory and exclusive forum selection clause:

> This Agreement shall be governed by and construed and administered in accordance with the internal substantive laws of the State of New York without regard to principles of conflict of laws. Each party agrees that any dispute arising out of this Agreement shall be subject to the exclusive jurisdiction of the New York courts and irrevocably and unconditionally waives any objection to the laying of venue of any action, suit or proceeding arising out of this Agreement in (i) any state court in the State of New York or (ii) any federal court in the State of New York, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

(*Id.* ¶ 18.)

In April and June 2024, the Weiss Companies filed voluntary chapter 11 bankruptcy cases in this Court. (*Id.* ¶ 19.) The Weiss Companies also filed an adversary proceeding against the Jefferies Entities which sought, in part, to avoid the Forbearance Agreement as a fraudulent transfer. (*Id.*) The Jefferies Entities moved to dismiss, arguing, in relevant part, that the guarantees contained in the Forbearance Agreement could not be avoided as fraudulent transfers because they were made "on account of an antecedent debt," and were therefore made for "reasonably equivalent value." (*Id.* ¶ 20.) The court issued an opinion and order granting in part Jefferies' motion to dismiss; in relevant part, the Court dismissed the Weiss Companies' claims to avoid the "guarantees granted under the . . . Forbearance Agreement" as a fraudulent conveyance, holding that the "plain language" of the Forbearance Agreement precluded any such claim, given that Weiss and the Weiss Companies "explicitly agreed that the . . . the guarantees provided under the 2024 Forbearance Agreement constitute 'reasonably equivalent value' for the benefit the [Weiss Companies] are receiving." (*Id.* ¶ 23 (citing *GWA, LLC v. Jefferies Strategic*

3

*Invs., LLC (In re Weiss Multi-Strategy Advisers LLC)*, 664 B.R. 492, 535–36 (Bankr. S.D.N.Y. 2024)).)  The Court further highlighted that the "the [] Forbearance Agreement, including the . . . guarantees, were 'for or on account of antecedent debts owed by certain of the [Weiss Companies] to the [Jefferies Entities]." (*Id.*)  The Court did not decide the issue whether George Weiss's personal guarantee was an avoidable transfer.

The Jefferies Entities separately brought suit to enforce Weiss's personal guarantee in the Supreme Court of the State of New York.  (*Id.* ¶ 24.)  Weiss removed that case to the United States District Court for the Southern District of New York, and then moved to dismiss the claims against him, arguing that Weiss's guarantee was not a "payment" guarantee.  (*Id.* ¶ 25.)  The district court denied Weiss's motion to dismiss and directed the parties to file motions for summary judgment. (*Id.*)  In his motion for summary judgment, Weiss argued that the Forbearance Agreement, and the guarantees contained therein, was unenforceable.  (*Id.* ¶ 26.)  On March 12, 2025, the United States District Court for the Southern District of New York issued an opinion and order granting the Jefferies Entities' motion for summary judgment in its entirety and denying Weiss's competing motion.  (*Id.* ¶ 27 (citing *Jefferies Strategic Invs., LLC v. Weiss*, No. 24 CIV. 4369 (AKH), 2025 WL 786578 (S.D.N.Y. Mar. 12, 2025)).)  The Clerk issued a judgment in favor of the Jefferies Entities, but without specifying the exact amount owed to the Jefferies Entities; the Clerk eventually issued a corrected judgment specifying that the Jefferies Entities are owed $113,493,250.00.  (*Id.* ¶ 30.)  Weiss filed a motion for reconsideration, which was rejected.  (*Id.* ¶¶ 28–29.)  Weiss also appealed the district court's decision to the Second Circuit.  (*Id.* ¶ 28.)

Just over two weeks after the corrected judgment was issued, on June 4, 2025, Weiss filed a voluntary petition for chapter 11 relief in the United States Bankruptcy Court for the

4

Southern District of Florida. (*Id.* ¶ 31.) In his chapter 11 petition, Weiss acknowledges that the Weiss Companies' chapter 11 cases are those of his "[a]ffiliate[s]." (*Id.* ¶ 31; *see also id.* Exhibit L (Weiss's chapter 11 petition) at 3, 8.) According to the Jefferies Entities, excluding a tax claim, "99.84% of Weiss's top 20 unsecured debts are to New York based entities." (*Id.*) Weiss lists Miami as his primary residence, but he also owns a $20 million apartment in the heart of Manhattan. (*Id.*)

On June 9, 2025, Weiss filed a case management summary. (*Id.* at Ex. M.) There, Weiss discusses two events which drove him to file for bankruptcy personally: first, the $113,493,250 judgment entered against him by the United States District Court for the Southern District of New York (*id.* at 3–4); and second, a tax claim filed by the IRS against Weiss for over $180 million (*id.* at 4). He also has numerous other debts, including a $121,440,000 debt owed to Bank of America. (*Id.* Ex. L at 9–15; *see also id.* Ex. M at 6 (noting that the unsecured claims against him add up to about $415,448,682.72), Ex. P at 16–17 (listing tens of thousands of dollars' worth of secured claims).) Weiss also states in his summary that he plans to initiate an adversary proceeding against the Jefferies Entities to avoid his personal guarantee in the Forbearance Agreement as a fraudulent transfer. (*Id.* Ex. M at 4.)

### B. Motion to Transfer

Jefferies first argues that, under Rule 1014(b) of the Federal Rules of Bankruptcy Procedure, when bankruptcy "petitions [are] . . . filed in different districts by . . . a debtor and an affiliate . . . [,][t]he court in the district where the first petition is filed may determine the district or districts in which the cases should proceed in the interest of justice or for the convenience of the parties." (*Id.* ¶ 33.) Under section 101(2)(A) of the Bankruptcy Code, an "affiliate" is defined as a debtor "that directly or indirectly owns, controls, or holds with power to vote, 20

5

percent or more of the outstanding voting securities of the debtor." Jeffries argues there can be no contest that Weiss is an affiliate of the Weiss Companies, since he owns, through his family trusts, a controlling stake in the Weiss Companies' parent entity, GWA, and in turn, controls the Weiss Companies' decision-making. (*Id.* ¶ 34.) Moreover, Weiss admitted to being an affiliate in his Florida filings. (*Id.*)

Jefferies then argues that both the interests-of-justice rationale and the convenience-of-the-parties rationale cut in favor of transfer. Starting with the interests-of-justice prong: first, transfer would promote the efficient administration of the bankruptcy estate; Weiss's personal bankruptcy estate is "joined at the hip" to the New York proceedings, so this Court, unlike the Florida court, is already familiar with the relevant facts. (*Id.* ¶ 39.) Weiss filed a lift-stay motion in his bankruptcy case in Florida in order to pursue his Second Circuit appeal against Jefferies, and he admits in his motion that allowing the Second Circuit appeal to continue "may resolve the issue that led to" the filing of his personal bankruptcy case. (*Id.* ¶ 39 n.9.) (The lift-stay motion was granted, *see infra*.) Moreover, Miami is far from the creditors and from the attorneys with knowledge of the relevant issues, including Weiss's own lawyers. (*Id.* ¶ 40.) Since the issues raised by Weiss's personal bankruptcy are interwoven with those already addressed by this Court, Jeffries' argues, judicial economy favors transfer because this Court is already familiar with the relevant questions which turn on state law. (*Id.* ¶¶ 41–42.) Fairness concerns also counsel in favor of transfer, as litigating an already-decided issue (whether the Forbearance Agreement is voidable as a fraudulent transfer) in a new venue risks the entry of an inconsistent judgment. (*Id.* ¶ 43.) And since the Forbearance Agreement is governed by New York law and has an exclusive New York selection clause, New York has a greater interest in Weiss's bankruptcy than Florida does. (*Id.* ¶¶ 45–46.) Jefferies argues that Weiss's choice of venue is

6

entitled only to limited deference because the existence of related actions in this Court weighs heavily in favor of transfer. (*Id.* ¶¶ 49–50.)

Jefferies then addresses the convenience of the parties and argues that at least three of the traditional six factors cut in favor of transfer: the convenience of the creditors, the location of the witnesses, and the economic administration of the estate. (*Id.* ¶¶ 53–57.)

### C. Opposition

Weiss seeks to avoid his guaranty obligation as a fraudulent transfer via an adversary proceeding commenced in his Florida bankruptcy against the Jefferies Entities. Weiss highlights that the question of whether his guaranty obligation to Jefferies constituted a fraudulent transfer was not ever before the Southern District of New York. (Opp. ¶ 10.) He also points out that in the Weiss entities' bankruptcy, when the Weiss entities attempted to avoid the Forbearance Agreement in its entirety as a fraudulent conveyance pursuant to section 548(a)(1)(B) of the Code, the Court dismissed this claim because the Forbearance Agreement embodied obligations which were *not* incurred by the debtors (the Weiss entities)—specifically, the guaranty obligation of Weiss himself. (*Id.* ¶ 12 (citing *In re Weiss Multi-Strategy Advisers LLC*, 664 B.R. 492, 534 (Bankr. S.D.N.Y. 2024)).) Now, by contrast, Weiss seeks to avoid his personal guaranty under the Forbearance Agreement. This precise issue has not been litigated in any court. Moreover, when the Court ruled on the motion to dismiss in the Jefferies adversary proceeding, "Mr. Weiss was not a party to the Jefferies Adversary, was not a debtor in bankruptcy at the time, and he had no opportunity to be heard on that point," so "this Court's finding did not and does not apply to Mr. Weiss." (*Id.* ¶ 26.) Moreover, Weiss contends that the bankruptcy judge overseeing his personal bankruptcy case, Judge Mark, "is more than capable of evaluating and ruling on any such issues if and when they arise in Mr. Weiss' personal Chapter

7

11 case." (*Id.*) He also discusses ways in which his anticipated argument in his adversary proceeding will differ from the issues addressed in this Court's MTD ruling. (*Id.* ¶¶ 27–29.)

Weiss points out that the Weiss entities' bankruptcies are winding down, and that Weiss has very little involvement with the corporate bankruptcies. (*Id.* ¶¶ 13–16.) He also describes the examiner's report issued in the corporate chapter 11's, which concluded that "Weiss did not engage in any improper conduct" and which "did not uncover any misconduct, fraud, or improper diversion of funds by Mr. Weiss as alleged by the Jefferies Entities." (*Id.* ¶ 15.)

Weiss notes that the Floridian bankruptcy judge is up to speed on the issues in Weiss's personal bankruptcy and is reviewing (or has reviewed) this Court's opinion dismissing in part the Jefferies adversary proceeding. (*Id.* ¶ 16 & n.6.)

Weiss emphasizes that two significant debts drove him to file for bankruptcy, not one: the judgment entered by the District Court for the Southern District of New York, *and* a $190+ million tax judgment for which the IRS filed a proof of claim. (*Id.* ¶ 18.) Weiss points out that his primary lawyers are located in Florida, and have appeared in New York only on a *pro hac vice* basis to file his Opposition; his New York-based lawyers are serving in a limited capacity as special litigation advisers. (*Id.* ¶¶ 5, 19.) He also notes that the Jefferies Entities and their counsel have been able to participate thus far in his individual bankruptcy proceeding, including in a 341 meeting. (*Id.* ¶¶ 20–24.)

For these reasons, Weiss argues that transfer is inappropriate here. He begins by pointing out that venue is proper in the Southern District of Florida, a fact which Jefferies does not contest. (*Id.* ¶¶ 30–32.) He then argues that transfer is not in the interest of justice because:

> (i) the administration of Mr. Weiss' personal bankruptcy estate has been efficiently and substantially advanced through the various filings made by Mr. Weiss to date, including specifically his Bankruptcy Schedules and Statement of Financial Affairs and the conduct and conclusion of his Initial Debtor Interview and section 341

8

meeting of creditors; (ii) Mr. Weiss' chosen bankruptcy professionals, including attorneys and financial advisors, are located within the Southern District of Florida, are actively engaged in moving his case forward and have now been formerly employed by the Bankruptcy Court in the Southern District of Florida; (iii) having matters heard in the Southern District of Florida will not result in any overlap with the Corporate Bankruptcy Cases, including because, as outlined above, Mr. Weiss is not seeking to have any issues already decided in the Corporate Bankruptcy Cases re-litigated in his personal Chapter 11 case; (iv) there is no indication or basis to suggest that the Jefferies Entities will not receive a fair trial in the Southern District of Florida; (v) venue in the Southern District of Florida is proper under 28 U.S.C. § 1408; (vi) the Jefferies Entities have already engaged sophisticated bankruptcy counsel in the Southern District of Florida, have obtained *pro hac vice* admissions for multiple attorneys, and have filed pleadings and taken positions in Mr. Weiss' case in the Southern District of Florida, thereby eliminating any claim of inconvenience; and (vii) any judgment entered in the Southern District of Florida will be equally enforceable in the Southern District of New York.

(*Id.* ¶ 34.) He also maintains that deference to his choice of venue is proper (*id.*), that his individual case is distinct from the corporate cases (*id.* ¶ 35), that there are no pending issues in the corporate cases that will affect his personal case (*id.*), and that he was "exonerated" by the examiner's report issued in the corporate cases (*id.*). He denies Jefferies' allegation of forum shopping and claims that it is Jefferies which is engaged in forum shopping by seeking a transfer of venue. (*Id.*) Multiple parties-in-interest, including Weiss's wife, have retained counsel in Florida and have become involved with the Floridian bankruptcy proceedings, so transferring the case would require them (including the 82-year-old Weiss) to incur significant costs, which would be unfair; Weiss further claims that transferring the case to New York would create the impression of favoring Jefferies over all others. (*Id.* ¶ 36.) As for Florida's interest in the case, Weiss points to the exemptions he claims in his bankruptcy case, which are governed by Florida law, the fraudulent transfer action he plans to file in Florida is also "premised on Florida statutes," and the trust through which he owns most of his assets is governed by Florida law. (*Id.* ¶ 38.)

9

Weiss also maintains that the convenience of the parties does not support transferring the case. Aside from the Jefferies Entities, the majority of Weiss's creditors by number are located outside of New York; the Jefferies Entities have an office in Florida, so litigating there would not be difficult for them; and Weiss's largest creditor (Bank of America) is already actively engaged in Weiss's Floridian chapter 11 and have not taken a stance on the motion to transfer. (*Id.* ¶ 43.) Weiss himself spends the majority of his time in Florida. (*Id.* ¶ 44.) Weiss claims that "[m]ost potential witnesses for the anticipated litigation and/or bankruptcy related issues in Mr. Weiss' personal Chapter 11 case are located in Florida, including Mr. Weiss and his bankruptcy financial advisor." (*Id.* ¶ 45.) The "paramount" concern for the economic and efficient administration of the estate also cuts against transfer, as Weiss's assets, professionals, and financial accounts are mostly located in Florida. (*Id.* ¶ 46.) Finally, Weiss has worked extensively with the local United States Trustee already. (*Id.* ¶¶ 49–50.)

Weiss then argues that Jefferies has failed to meet its burden of proof, and claims that the "allegations asserted by the Jefferies Entities as the basis for their Motion to Transfer"—namely, that Weiss "filed his Chapter 11 case in Florida in order to avoid the jurisdiction of New York courts"—"is simply false and not supported by any competent evidence." (*Id.* ¶ 54.) Weiss claims that his status as an "affiliate" of the Weiss entities is "merely a gating issue as to whether a venue transfer motion may even be considered." (*Id.* ¶ 51.)

In the declaration Weiss filed along with the Opposition (*see* Opp. Ex. A), Weiss adds that the debt held by the Jefferies Entities represents only about one-third of his total debt, so his "case is not a reactionary filing limited to Jefferies-related litigation but a comprehensive reorganization effort." (*Id.* ¶ 8.)

10

Weiss's bankruptcy counsel in Florida also filed a declaration ("Gayo-Guitian Decl.," Ex. B to the Opp.), in which she noted that each of the lift-stay motions Weiss filed in his personal bankruptcy has been granted (*id.* ¶ 3).

**D. Reply**

The Jefferies Entities emphasize that Weiss is an affiliate of the Weiss entities with bankruptcy proceedings pending in New York and argue that this fact alone is practically determinative of their motion, as "having two different courts tugging at closely related bankruptcy estates from opposite ends of the east coast, with essentially the same parties and similar issues, is not conducive to an economic and efficient administration of those same estates," especially when that scenario "involves a serious risk of inconsistent judgments." (*Id.* ¶ 4; *see also id.* ¶ 5.) They also maintain that, despite Weiss's protestations to the contrary, his personal case *is* inextricably intertwined with the corporate cases here, since he (1) conceded he filed "as part of an effort to avoid a New York judgment through asserting fraudulent conveyance claims that this Court has already dismissed," and (2) "confirmed that certain professionals that Weiss seeks to obtain in his personal chapter 11 will also provide services to the Weiss Companies in their chapter 11 cases, and that Weiss intends to pay for those services." (*Id.* ¶ 6.) They claim that Weiss's filing of an adversary proceeding against the Jefferies entities in the Florida case also further intertwines his case with the corporate cases pending here. (*Id.* ¶ 9.)

They also point out that the Opposition ignores the forum selection clause in the Forbearance Agreement that applies to all disputes arising from that Agreement and which is "at the heart of" Weiss's individual bankruptcy case. (*Id.* ¶ 8.) The Jefferies Entities never say that this forum selection clause either requires Weiss to file in New York; rather, they argue that the

11

Florida filing "creates unnecessary risk of inconsistent judgments and opportunities for collateral attack, including by seeking to have an Article I court hear issues that were already addressed by an Article III court in a different circuit." (*Id.* ¶ 10.) As for Weiss's argument that the issue presented by his new adversary proceeding is distinct from the issues in both the old AP and the district court litigation, the Jefferies Entities claim that this is not a credible distinction to draw: "The Weiss Adversary Proceeding concerns the same Forbearance Agreement, the same parties, and the same transactions that have already been litigated in this Court, and in which Weiss' personal lawyer already appeared." (*Id.* ¶ 13.)

The Jefferies Entities then argue that Weiss's personal bankruptcy case is in its infancy. (*Id.* ¶ 14.) There has only been one hearing so far, the Floridian court has not decided any issues on the merits yet, and all "significant docket activity" took place after Weiss filed his Opposition and "is entirely the result of Weiss' efforts to dig his heels into the Florida sand." (*Id.* ¶ 14.) As for Weiss's contentions that the entities' bankruptcies are nearly complete, the Jefferies Entities point out that no plan has been confirmed in those cases, which is the factual consideration of import. (*Id.* ¶ 17.)

## II.    LEGAL STANDARD

Because the Weiss Companies filed their chapter 11 cases in this district before George Weiss filed his chapter 11 case in Florida, Bankruptcy Rule 1014(b) provides that this Court "may determine, in the interest of justice or for the convenience of the parties," whether to transfer Weiss's case to this district. The bankruptcy transfer statute, 28 U.S.C. § 1412, authorizes the transfer of a "case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Section 1412 is worded in the disjunctive, allowing a case to be transferred under either the interest-of-justice rationale or

12

the convenience-of-parties rationale. *Enron Corp. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 637 (Bankr. S.D.N.Y. 2004). "[T]he power to transfer a case [or proceeding] should be exercised cautiously." *Id.* at 638 (internal citation omitted). A debtor's selection of a proper venue is "entitled to great weight" in the consideration of change of venue motions. *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002). As a result, "a heavy burden of proof rests on the moving party to demonstrate that the balance of convenience clearly weighs in his favor." *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc. (In re Lionel Corp.)*, 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982) (deciding motion to transfer an adversary proceeding from the district in which the main bankruptcy case was filed). "The party moving for change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence." *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1390 (2d Cir. 1990).

The interests of justice prong has been characterized as a broad and flexible standard. *In re Enron*, 274 B.R. at 343 (citing *Manville*, 896 F.2d at 1391). The court considers whether (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiff's original choice of forum should be disturbed. *In re Enron*, 317 B.R. at 638–39. The "most important of these considerations is the economic and efficient administration of the estate." *In re Enron*, 284 B.R. 376, 395 (Bankr. S.D.N.Y. 2002) (collecting cases). "The central consideration to the 'economic and efficient administration of the estate' inquiry is one that ultimately implicates the outcome of debtor's case, that is whether the debtor-

in-possession will be able to formulate a plan that is acceptable to all relevant parties." *Id.* (internal citation omitted).

The convenience of parties prong has six factors: (i) proximity of creditors of every kind to the court; (ii) proximity of the debtor to the court; (iii) proximity of witnesses necessary to the administration of the estate; (iv) location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary administration if liquidation should result. *In re Enron Corp.*, 274 B.R. at 343 (internal citation omitted). The consideration given the most weight is the economic and efficient administration of the estate. *Id.*

### III.   DISCUSSION

The Jefferies Entities have not borne their heavy burden of proof under either the interests-of-justice or the convenience-of-the-parties rationale.

### A. Interests of Justice

#### 1. Economic and Efficient Administration of George Weiss's Estate

Weiss's estate is more complex than the Jefferies Entities make it out to be. It is plain that he did not file *solely* to address the district court's judgment resulting from his litigation with the Jefferies Entities  He has over $415 million in unsecured debt (of which about 27% is held by the Jefferies Entities—a significant portion, but not all); hundreds of millions of dollars' worth of assets (Motion at Ex. L at 6), for which he has claimed tens of millions of dollars' worth of exemptions under both federal and Florida law (*id.* Ex. P at 14–15); and bankruptcy counsel and financial advisors located in Florida. While Weiss is an affiliate of the Weiss Companies, he is not so inextricably intertwined with the entities as to justify overcoming the presumption of debtor's choice in venue selection. Weiss does own significant stakes in multiple entities, including the Weiss Companies, either personally or through his trust (*see* Motion Ex. P at 7–9,

14

13), but there is no indication that money has "sloshed back and forth among him and" the Weiss entities, as they did with the debtors in *In re Portjeff Dev. Corp.*, 118 B.R. 184, 195 (Bankr. E.D.N.Y. 1990); there does not appear to be any concern about the duplication of discovery or any other legal or accounting or other financial work by permitting Weiss's personal case to go forward in Florida, *compare id.* at 196; and it is not obvious that Weiss chose to file in his home district in order to "complicate administration of [his] affiliates' cases," *In re TS Employment, Inc.*, No. 15-10243 (MG), 2015 WL 4940348, at *4 (Bankr. S.D.N.Y. Aug. 18, 2015). The fact that some of the professionals Weiss seeks to employ in his personal chapter 11 were also involved in the Weiss Companies' chapter 11's and that Weiss will pay for their work in both cases (*see* Reply at 4) is not determinative, as this does not necessarily mean that the (apparently tax-related) issues in one case will impact those in the other. And while the "learning curve" this Court may face in the event of a transfer may not be significant, it still would have to catch up on the information the Florida court learned over the past couple of months, and regardless, is not a sufficient consideration to merit overruling the debtor's choice of venue.

The Jefferies Entities point to the cost to Weiss's creditors of appearing in a Florida court. (Motion ¶ 40.) This is not an appropriate consideration under this prong. Moreover, the Jefferies Entities do not address Weiss's claim that many of his other creditors are actively taking positions in his bankruptcy case in Florida.

    2. <u>Interests of Judicial Economy</u>

While the issue raised in Weiss's Florida adversary proceeding—whether his personal guarantee of the loan the Jefferies Entities made to the Weiss Companies is voidable as a fraudulent transfer—is similar to those raised in the Weiss Companies' adversary proceeding in this Court and to the litigation between Weiss and the Jefferies Entities in the District Court for

15

the Southern District of New York (and now before the Second Circuit), neither this court nor the District Court has addressed that precise issue. Neither court has had an opportunity to do so. Regardless, even if this issue had been previously determined, the Floridian court would be just as well-equipped as this Court to determine the effect of such a prior ruling (or of the prior rulings as they currently exist) on Weiss's adversary proceeding. And contrary to the Jefferies Entities' arguments, Weiss's adversary proceeding will not necessarily be governed by New York law. While the interpretation and enforcement of the Forbearance Agreement is governed by New York law, the question whether Weiss's personal guarantee constitutes a fraudulent transfer is not necessarily—it may be governed by federal or Floridian law. (*See* Opp. at 18 (stating that the adversary proceeding is "premised on Florida statutes").) And multiple other components of Weiss's personal bankruptcy are governed by Florida law (or at least, he claims they are): for example, the operation of his revocable trust, through which he owns much of his property, and the exemptions he asserts. (*Id.*) There is also no indication in the record currently before the Court that Weiss filed for bankruptcy in order to collaterally attack or otherwise "escape" the effect of the District Court's judgment against him. (*See* Motion ¶ 42.)

    3. <u>Fair Trial</u>

There is no question that the bankruptcy court in Florida and this Court would provide both the Jefferies Entities and Weiss with a fair trial. (To the extent the Jefferies Entities argue that there would be no fair trial in Florida "because litigating an already decided issue (*i.e.*, whether the Forbearance Agreement is voidable as a fraudulent transfer) in a new venue risks the entry of an inconsistent judgment subject to review by different circuits," this argument fails for two reasons, both discussed above. (Motion ¶ 43.) First, the issue Weiss states he will present in his forthcoming adversary proceeding is not one which has yet been decided. Second, the

16

Floridian bankruptcy court is perfectly capable of deciding on the effect of prior judgments on Weiss's adversary proceeding.)

4. New York's vs. Florida's Interest

As discussed *supra*, many of the issues raised in Weiss's bankruptcy seem likely to be governed by Florida law, not New York law. The Jefferies Entities seem to be preparing to argue that Weiss's fraudulent transfer claim is governed by New York law because the Forbearance Agreement contains a New York law governing clause. (Motion ¶ 45; Reply ¶¶ 8–11.) They are free to make such an argument before the Floridian court concerning the adversary proceeding; this Court will not opine on the issue as it is not squarely presented by this venue-transfer motion. This does not mean that Weiss's *entire* personal bankruptcy case must (or even should) be transferred to a New York court. The cases the Jefferies Entities cite (*see* Reply at 6) are not to the contrary. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 52 (2013) (discussing the effect of a forum-selection clause on a dispute governed by the contract containing such a clause, *not* on a bankruptcy case); *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013) (same).

Even if New York had a greater interest in Weiss's personal bankruptcy than Florida—which is unclear from the record—this is but one factor out of six cutting in favor of transfer. None of the other factors weigh in favor.

5. Enforceability of Judgments

Allowing Weiss's personal bankruptcy to proceed in Florida would not endanger the enforceability of any judgments. The Jefferies Entities do not provide a coherent argument to the contrary—they merely state that Weiss filed for bankruptcy as "part of an effort to avoid a New York judgment" by bringing a fraudulent conveyance claim. (Motion ¶ 48.) Moving Weiss's

17

bankruptcy case to New York would not have an effect on the fact that he filed for bankruptcy and is bringing an adversary proceeding.

      6.   <u>Debtor's Original Choice of Venue</u>

The Jefferies Entities argue that Weiss's choice of venue should be given no deference since he is engaged in forum shopping. It is far from clear that Weiss is forum shopping: he spends most of his time in Florida, has substantial assets in Florida and governed by Florida law, and is not seeking to halt all New York (and Connecticut) actions and try to bring them to Florida or collaterally attack them in a Florida court—he has, rather, moved to lift the stay to continue litigating in New York. And again, it seems just as likely that, were Weiss's case to be moved to this Court, he would continue to pursue his adversary proceeding against the Jefferies Entities—his choice of forum is not clearly related to his decision to seek to avoid his personal guarantee. Since the Jefferies Entities have not sufficiently shown that Weiss is engaged in forum-shopping, his choice of forum is entitled to deference.

The Jefferies Entities have not shown by a preponderance of the evidence that the interests of justice would be favored by transferring Weiss's personal chapter 11 case to this Court.

    **B.  Convenience of the Parties**

      1.   <u>Proximity of Creditors</u>

Most of Weiss's creditors by number are located outside of New York. (Motion Ex. P at 17–37.) The two largest New York-based creditors, the Jefferies Entities and Bank of America, are engaged in the Florida case and will not be severely prejudiced if the case continues in Florida. This factor cuts against transfer.

18

2. <u>Proximity of Debtor</u>

The debtor is closest to the Florida court, a factor which cuts against transfer.

3. <u>Proximity of Witnesses</u>

This factor may cut in favor of transfer—it is unclear from the record who the witnesses will be. However, this is outweighed by the other factors.

4. <u>Location of Assets</u>

It is also unclear so far where Weiss's assets are located, apart from his primary residence and the fact that his financial accounts are administered in Florida (*see* Opposition ¶ 46.) Again, however, this factor is outweighed by the others.

5. <u>Economic Administration of the Estate</u>

See *supra* – this cuts against transfer.

6. <u>Necessity for Ancillary Administration in the Case of Liquidation</u>

Most cases do not consider liquidation because it is illogical to focus on liquidation contingencies when the goal of the bankruptcy is reorganization. *See Puerto Rico v. Commonwealth Oil Refining Co., Inc. (In re Commonwealth Oil Refining Co., Inc.)*, 596 F.2d 1239, 1248 (5th Cir. 1979). Therefore, the Court should not consider this factor.

The Jefferies Entities have again failed to bear their evidentiary burden under the interests-of-creditors standard.

## IV.  CONCLUSION

For the foregoing reasons, the Motion is **DENIED.**

**IT IS SO ORDERED.**

Dated:   August 25, 2025
         New York, New York

                                              *Martin Glenn*
                                        MARTIN GLENN
                                Chief United States Bankruptcy Judge